# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| NET NAVIGATION SYSTEMS, LLC | § | |
| | § | |
| V. | § | CASE NO. 4:13-CV-254 |
| | § | Judge Mazzant |
| EXTREME NETWORKS, INC. | § | |

## MEMORANDUM ORDER DENYING DEFENDANT EXTREME NETWORKS, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Pending before the Court is Defendant Extreme Networks, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #13). After considering the motion, the responses, and the relevant pleadings, the Court finds the motion is denied.

### BACKGROUND

Plaintiff Net Navigation Systems, LLC ("Net Navigation") filed this litigation asserting that Defendant Extreme Networks, Inc.'s ("Extreme") Black Diamond X8 and Black Diamond 8000 series of switches and routers infringe U.S. Patent Nos. 6,434,145 (the "'145 Patent") and 6,625,122 (the "'122 Patent") (Dkt. #1, ¶¶ 12, 17). Net Navigation is a Texas limited liability company with its headquarters in Round Rock, Texas (Dkt. #15 at 2, Declaration of Brent Farney, ¶ 2). Extreme is a Delaware corporation headquartered in San Jose, California (Dkt. #13 at 2, Declaration of Richard Graham, ¶ 2).

On April 23, 2014, Net Navigation filed four lawsuits in this district claiming infringement of the '122 and '145 Patents.[1] Two of these cases have been dismissed, and this case and one other case involving the same patents remain pending before the undersigned. Extreme is the only defendant that has moved for a transfer of venue; therefore, the undersigned

---

[1] In addition to the present suit, Net Navigation filed the following actions on April 23, 2014: *Net Navigation Systems, LLC v. Avaya Inc.*, No. 4:14-cv-252 (E.D. Tex. Apr. 23, 2014); *Net Navigation Systems, LLC v. Arista Networks, Inc.*, No. 4:14-cv-251 (E.D. Tex. Apr. 23, 2014); and *Net Navigation Systems, LLC v. Telefonaktiebolaget LM Ericsson*, No. 4:14-cv-253 (E.D. Tex. Apr. 23, 2014).

will be resolving the disputes regarding the patents at issue in at least one suit before it regardless of whether this litigation is transferred.

In addition, this Court has presided over four previous lawsuit in which Net Navigation asserted infringement of the '122 and '145 Patents.[2] This Court conducted a *Markman* hearing on November 14, 2012, and issued its claim construction order construing the terms of both patents on December 11, 2012. *See Net Navigation Systems, LLC v. Cisco Systems, Inc.*, No. 4:11-cv-660 (E.D. Tex. Dec. 11, 2012).

On July 29, 2014, Extreme filed its motion to transfer to the Northern District of California (Dkt. #13). On August 18, 2014, Net Navigation filed its response (Dkt. #15). On August 29, 2014, Extreme filed its reply (Dkt. #18). On September 8, 2014, Net Navigation filed its sur-reply (Dkt. #19).

## LEGAL STANDARD

Extreme moves to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice...to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense…'" *Van Dusen v.*

---

[2] *Net Navigation Systems, LLC v. Cisco Systems, Inc.*, No. 4:11-cv-660 (E.D. Tex. Dec. 11, 2012); *Net Navigation Systems, LLC v. AT&T Inc*., No. 4:13-cv-190 (E.D. Tex. Apr. 30, 2013); *Net Navigation Systems, LLC v. Huawei Technologies Co., Ltd*., No. 4:11-cv-662 (E.D. Tex. Dec. 11, 2012); and *Net Navigation Systems, LLC v. Alcatel-Lucent*, No. 4:11-cv-663 (E.D. Tex. Dec. 11, 2012).

*Barrack*, 376 U.S. 612, 616 (1964). As transfer of venue is not a matter of substantive patent law, case law from the Court of Appeals for the Fifth Circuit governs this motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show

good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315.

## ANALYSIS

The first issue that the Court must determine is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312. Net Navigation does not dispute that the Northern District of California is a proper venue for this case. As this matter is not in dispute, Extreme meets the threshold inquiry for a transfer of venue analysis.

**A.     Public Interest Factors**

The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question – (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law.

*1. The administrative difficulties flowing from court congestion*

In considering this factor, the speed with which a case can come to trial and be resolved may be a factor. *In re Genentech, Inc*., 566 F.3d 1338, 1347 (Fed. Cir. 2009) (citing *Gates Learjet Corp v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")). The Federal Circuit has noted that this factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story. *Id*.

The most recent statistics obtained by this Court for the 12-month period ending in June 30, 2014, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 27.9 months, as compared to 31.0 months in the Northern District of California.[3] The median time from filing to disposition in the Eastern District of Texas was 9.0 months and 8.2 months in the Northern District of California.

This factor weighs against transfer, as this case could be brought to trial more quickly in the Eastern District of Texas, particularly given this Court's familiarity with the patents at issue.

*2. The local interest in having localized interests decided at home*

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206)). The mere sale of "several" or "some" of the allegedly infringing products in a given district is not enough to shift this factor in favor of one party. *See TS Tech*, 551 F.3d at 1321.

Extreme asserts that this factor weighs in favor of transfer because the Northern District of California is home to Extreme, its documents are located there, and it maintains its headquarters and many of its employees there. Further, the accused products were designed and developed in the Northern District of California, by employees that still reside there. Net Navigation contends that this factor is neutral, as both districts have an interest in deciding this dispute. Net Navigation argues that local interest in the context of patent litigation is generally neutral, given that federal law governs the patent claims and is applied neutrally in all

---

[3] *See* Federal Court Management Statistics, June 2014,
www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx, accessed October 21, 2014.

jurisdictions. Further, Net Navigation contends that the presence of Ericsson AB headquarters in Plano, Texas, gives this jurisdiction a local interest in this dispute. Net Navigation asserts that Ericsson AB is one of Extreme's "major customers accounting for 10% or more of [Extreme's] net revenue" (Dkt. #15 at 13 (citing Ex. B at 7, C-G)).

The Court agrees that this factor weighs in favor of transfer. The Northern District of California is home to Extreme, the location where some of its employees are located, and it is where the accused products were developed.

*3. The familiarity of the forum with the law that will govern the case*

The parties do not dispute that both courts are familiar with the relevant law. Accordingly, the Court agrees with the parties that this factor is neutral.

*4. The avoidance of unnecessary problems in conflict of laws*

As this is a patent case arising under federal law, there are no issues relating to conflict of laws. The court agrees with the parties that this factor is neutral.

**B. The Private Interest Factors**

The Fifth Circuit also considers four non-exclusive "private" factors – (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of willing witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315.

*1. The relative ease of access to sources of proof*

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace."

*DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316)). "The Federal Circuit has observed that '[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer,' and therefore the location of the defendant's documents tends to be the more convenient venue.'" *Id*. (citing *Genentech*, 566 F.3d at 1345). It is presumed that the bulk of the discovery material related to a corporate party is located in that party's corporate headquarters. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Extreme contends that the bulk of its relevant documents, including technical, sales, marketing, and financial documents are "located in or otherwise available in its San Jose headquarters" (Dkt. #13 at 5). Net Navigation contends that the bulk of its documents are located in Round Rock, Texas, or in Georgetown, Texas (Dkt. #15 at 8). Net Navigation asserts that because Extreme admits that its documents are either located in the Northern District of California, or otherwise available there, that indicates that Extreme will suffer no hardship in transporting its documents to Sherman, Texas, for this litigation.

The Court agrees with Extreme that the bulk of relevant documents are located in the Northern District of California. However, given the fact that some documents will have to be transported to the Northern District of California, and that relevant documents also exist in Texas, the Court finds this factor weighs only slightly in favor of transfer.

*2. The availability of compulsory process to secure the attendance of witnesses*

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. FED. R. CIV. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii).

Extreme argues that the Northern District of California has subpoena power over the sole living inventor on the '145 Patent, the two prosecuting attorneys on the patents-in-suit, the former Extreme employees who are knowledgeable about the original design and development of the accused products, and certain Broadcom employees who have information relating to the chip sets and processors used by Extreme in the accused products that is not otherwise available to Extreme.

Net Navigation contends that Extreme's argument fails because it has not identified any witness that would refuse to testify in the Eastern District of Texas, and that Net Navigation failed to identify any witnesses of Broadcom that are specifically located in the Northern District of California. Net Navigation identifies one likely expert witness within the subpoena power of this Court, as well as its manager who is located in Texas.

Extreme identifies five current employees, two former employees, one inventor, and two patent prosecution attorneys who are the most likely witnesses, and who all work or reside in the Northern District of California. There are two witnesses identified by Net Navigation subject to the subpoena power of the Eastern District of Texas. This factor weighs in favor of transfer.

*3. The cost of attendance for willing witnesses*

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for

trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The "100-mile" rule applies because the Northern District of California is more than 100 miles from Sherman, Texas. *See id*. When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis. *In re Google Inc*., 412 F. App'x 295, 296 (Fed. Cir. 2011).

As stated above, Extreme identifies five current employees, two former employees, one inventor, and two patent prosecution attorneys who are their most likely witnesses, and who all work or reside in the Northern District of California. Net Navigation identified one likely expert witness within 100 miles of this Court, and its manager who is located in Round Rock, Texas and will likely testify. Its remaining witnesses are in diverse locations, such as Missouri and Pennsylvania, which Net Navigation asserts is substantially closer to the Eastern District of Texas than the Northern District of California.

Transferring this action from the Eastern District of Texas to the Northern District of California would increase the distance that Net Navigation's witnesses must travel by approximately twelve hundred miles. Denying Extreme's motion would require its witnesses in California to travel about fifteen hundred miles. Extreme has only demonstrated to this Court that granting its motion would serve to transfer the inconvenience from Extreme's witnesses to Net Navigation's witnesses. That is insufficient to shift this factor in favor of the transferee venue. This factor is neutral.

*4. All other practical problems that make trial easy, expeditious, and inexpensive*

All of the public and private interest factors are part of a transfer of venue analysis, but "judicial economy can be a 'paramount consideration.'" *In re Vistaprint*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). While previous litigation is not dispositive, familiarity with the patents-in-suit gained through conducting claim construction can weigh heavily in favor of maintaining the action in that court. *See id*. at 1344, 1347 n.3.

This Court has extensive prior experience with the patents-in-suit, especially given the fact that the undersigned conducted a *Markman* hearing and issued a claim construction order regarding the patents-in-suit. Given the complexity of the technology involved, the Court appointed, and consulted with, a technical advisor in the prior cases who examined the patents-in-suit and helped the Court understand the technical background of the patents. Further, there is another case currently pending before the undersigned that has not moved for transfer, and will remain before the undersigned for all pre-trial matters. As of the current date, a scheduling order has been entered in both cases setting the claim construction briefing schedule and hearing date for the same dates. Separating these two cases would require two separate courts to decide many of the same issues, many of which have previously been considered by this Court, which is a waste of judicial resources and could lead to inconsistent results. In short, the Court finds that its experience gained in the prior litigation, coupled with the fact that there is another pending case proceeding on the same schedule regarding the same patents-in-suit, weighs heavily against transfer. *See Lonestar Inventions L.P. v. Sony Elecs. Inc.*, No. 6:10-cv-588, 2011 WL 3880550, at *4 (E.D. Tex. Aug. 29, 2011) ("The parties and the judiciary would benefit from the Court's familiarity with the patent-in-suit, which would require a substantial investment of time, energy

and money to replicate. Accordingly, gains in judicial economy derived from the Court's prior experience with the patent-in-suit weighs against transfer.") (quoting *ColorQuick, LLC v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *7 (E.D. Tex. Jul. 22, 2010), *aff'd* 628 F.3d 1342 (Fed. Cir. 2010)). Transfer would result in duplicative and repetitive efforts in multiple courts, increasing the burden of time, resources, and money on the judicial system and the parties. *See ColorQuick*, 2010 WL 5136050, at *7-8 ("[T]he Court should not 'permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'") (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). This factor weighs heavily against transfer.

## CONCLUSION

Public interest factor 1 – the administrative difficulties flowing from court congestion – weighs against transfer, public interest factor 2 – the local interest in having the case tried in Michigan – weighs in favor of transfer, while the remaining public interest factors are neutral. Private interest factor 1 and 2 – the ease of access to sources of proof and availability of compulsory process – weigh slightly in favor or in favor of transfer, and factor 3 – the cost of attendance for willing witnesses – is neutral. Private interest factor 4 – all other practical problems that make trial of a case easy, expeditious, and inexpensive – weighs heavily against transfer.

Extreme has not met its burden to demonstrate that the Northern District of California is a "clearly more convenient" forum than the Eastern District of Texas. The factors that favor transfer include the local interest of the Northern District of California as the "home" of Extreme; the access to sources of proof that are generally available there or that can be made

11

available there; and the availability of compulsory process of witnesses.  Heavily outweighing these factors is the fact that this Court has extensive experience with these same patents, including a *Markman* hearing and claim construction order, and it is much more efficient to conduct the two co-pending trials of these patents-in-suit in one forum.  Further, the Eastern District of Texas can bring the case to trial faster than the Northern District of California, and the remaining factors are neutral.  Thus, the Court finds that the judicial economy vastly outweighs the factors favoring transfer, and Extreme has not met its burden to demonstrate that the Northern District of California is "clearly more convenient."  This case should remain in the Eastern District of Texas.

Accordingly, it is **ORDERED** that Defendant Extreme Networks, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #13) is **DENIED**.

**SIGNED this 27th day of October, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE